IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2018 Session

## JONATHAN ELLIOTT v. APPLE INVESTORS GROUP LLC, ET AL.

### Appeal from the Circuit Court for Shelby County
No. CT-003866-15     Rhynette N. Hurd, Judge

_____

### No. W2017-02385-COA-R3-CV

_____

This is an appeal in a slip and fall case. The plaintiff fell in a restaurant bathroom due to water on the floor. According to the plaintiff, the water was steadily dripping from a utility faucet located beneath the bathroom vanity. The plaintiff argues that the existence of the utility faucet was a dangerous condition such that the restaurant had a duty to either remedy it or warn of its existence. The trial court granted summary judgment to the restaurant, concluding that the existence of the faucet was not a dangerous condition. We agree and affirm the decision of the circuit court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

William B. Ryan, Ted S. Angelakis, B. Andrew Davis, Memphis, Tennessee, for the appellant, Jonathan Elliott.

Jennifer S. Slager, Memphis, Tennessee, for the appellees, Apple Investors Group, LLC d/b/a Applebee's Neighborhood Grill and Bar, and AIG TN Holding, LLC.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Jonathan Elliott was dining at an Applebee's restaurant with his family on September 20, 2014. Before eating, Elliott entered the bathroom and washed his hands, and he did not note any issues with the condition of the bathroom at that time. Roughly one hour later, Elliott returned to the bathroom after eating to wash his hands again. This

time, Elliott slipped and fell as he entered the bathroom due to water on the floor. When a manager and Elliott's son came to his aid, they searched for the source of the water on the floor and determined that it was dripping in a small steady stream from a utility faucet "up under" the bathroom vanity.[1]

Elliott filed this lawsuit seeking to recover for injuries he sustained during the fall. The complaint named as defendants Apple Investors Group, LLC d/b/a Applebee's Neighborhood Grill & Bar and AIG TN Holding, LLC, the entities that own and manage the restaurant. Elliott alleged that an unreasonably dangerous condition existed on the premises that created an unreasonable risk of harm to customers. Specifically, the complaint alleged that the cleaning faucet underneath the bathroom vanity was either leaking water and in need of repair or safety features or otherwise hazardous and dangerous for persons traversing the bathroom. The complaint alleged that the cleaning faucet had no safety cap and no open drain to collect leaking water, so the leak caused a puddle of water to accumulate in the restroom. The complaint alleged that this dangerous condition had existed for some time prior to the date of the incident and that the defendants knew or should have known that the condition created a hazard. The plaintiff alleged that the condition of the bathroom violated the Americans with Disabilities Act and City of Memphis ordinances regarding plumbing requirements, evidencing a reckless disregard for standards of safe plumbing. The complaint alleged that the defendants were negligent by failing to take proper preventive measures, failing to place a drain near the faucet, failing to cover or cap the faucet, failing to ensure the utility faucet was off and not leaking, failing to repair or maintain safe plumbing, failing to keep the bathroom tile free of water, failing to warn of the inherently dangerous condition, failing to barricade or close the restroom, and failing to put down substances or materials to make the area safe.

The defendants filed an answer, and discovery ensued. One year later, the defendants filed a motion for summary judgment. First, the defendants asserted that they had no actual or constructive knowledge of a running faucet. The defendants submitted the deposition testimony of Elliott, who stated that he entered the bathroom one hour prior to his fall, and at that time, the floor was clean and water-free, and he did not notice anything leaking. They also submitted the testimony of the restaurant manager, who testified that he was in the restroom "maybe ten minutes before" Elliott fell, and he did

---

[1] According to Elliott, water was still dripping from the faucet in a small steady stream. The manager could not recall if water was still actively streaming from the faucet but conceded that the water on the floor appeared to have come from the utility faucet. Because this case was resolved on a motion for summary judgment, we will take the facts in the light most favorable to Elliott as the non-moving party. *See Grogan v. Uggla*, 535 S.W.3d 864, 884 (Tenn. 2017). The manager described seeing a faucet or spigot between pipes on either side. He said he was previously unaware of the existence of the utility faucet "up under there because we never use it." At the summary judgment hearing, Elliott's attorney also acknowledged that the faucet was "obscured and underneath the sink" and could not be seen by Elliott when he entered the bathroom "because it was outside of his vision."

not notice any water on the floor at that time.  The manager said he was not aware of any previous issues with water accumulating on the floor or of anyone using the utility faucet or performing work on it during his period of employment.

Aside from the issue of actual or constructive notice, the defendants also asserted in their motion for summary judgment that the existence of the utility faucet beneath the vanity was not a dangerous condition in the first place.  The defendants submitted the affidavit of a licensed plumber who stated that faucets under sinks in commercial restrooms are quite common.  The plumber opined that this particular faucet at Applebee's complied with the International Plumbing Code and did not constitute a dangerous condition.  He further stated that the restroom had one drain, which was sufficient given the size of the bathroom and complied with the plumbing code, and he opined that the restroom as a whole was in compliance with the plumbing code.

Elliott filed a response to the defendants' motion for summary judgment, arguing that the record contained ample proof to support a jury finding that the defendants created a dangerous condition.  Specifically, Elliott argued that the defendants were aware of the faucet's existence and chose to allow it to exist in a functioning capacity connected to a water supply without taking any steps to prevent it from causing water to accumulate on the floor, such as sealing or locking it.  Elliott admitted that the utility faucet was not used *by the defendants* near the time frame of the incident.  Elliott also conceded that no standing or running water had been reported to Applebee's staff before the time of the incident.  However, Elliott argued that "Notice is a Non-Issue" because the defendants created the allegedly dangerous condition, which was, in the words of Elliott, "the existence of the water faucet/spigot."[2]  Elliott acknowledged the affidavit of the licensed plumber and stated that he "[did] not dispute that the faucet may be in compliance with plumbing code," but he argued that compliance with the plumbing code was irrelevant to the question of the defendants' liability.  Elliott's attorney further clarified at the summary judgment hearing that he was not making an argument that the faucet was not functioning properly.  (Similarly, on appeal, Elliott states that "it is undisputed that the faucet/spigot was functioning and it is not challenged that it was in compliance as installed.")  Still, according to Elliott, a jury could reasonably conclude that allowing a functioning but unused water faucet to remain uncapped and unlocked, open and accessible to the public and capable of being turned on at any moment, created a dangerous condition.  In support of his response, Elliott submitted photographs of the faucet and additional testimony from his own deposition in addition to that of the

---

[2] Alternatively, Elliott argued that he could establish notice by discrediting the testimony of the manager, who stated that employees inspect the restrooms every thirty minutes and that the floor was clear ten minutes before the incident.  However, no issue is raised on appeal regarding this alternative notice argument.  Focusing on the existence of the faucet, Elliott's brief states that "this is not a case of Defendants/Appellees failing to warn restaurants patrons of a wet or slippery floor."

restaurant manager.[3]

After a hearing, the trial court entered an order granting summary judgment to the defendants. The trial court noted the affidavit of the plumber who stated that the existence of the faucet did not violate the plumbing code and was not a dangerous condition. The trial court found that Elliott submitted nothing other than his own allegation to support a finding that the faucet was dangerous. The trial court concluded that the existence of the faucet was not a dangerous condition, and therefore, the defendants had no duty to remedy the faucet or warn of its existence. Having concluded that Elliott failed to prove an essential element of his prima facie case, the court concluded that the defendants were entitled to judgment as a matter of law. Elliott timely filed a notice of appeal.

## II. ISSUE PRESENTED

On appeal, Elliott asserts that the trial court erred in holding that no dangerous condition existed on the premises that would give rise to a duty to eliminate or remove the dangerous condition. For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment may satisfy its burden of production by (1) affirmatively negating an essential element of the nonmoving party's claim or (2) demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish its claim. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported, the nonmoving party, in order to survive summary judgment, may not rest upon the mere allegations or denials of its pleading but must respond, and by affidavits or one of the other means provided in Rule 56, set forth specific facts showing that there is a genuine issue for trial. *Id.* at 265. "The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* "Summary

---

[3] Elliott claimed in his response that the restaurant manager "was aware that in the past customers had actually engaged in general horseplay in the restroom which left accumulated water on the restroom floor." However, the attached deposition testimony only indicates that the manager occasionally had to stop kids from "making a mess" with the automatic paper towel machine, and he specifically denied seeing any kids "throwing water at each other, [or] anything like that."

- 4 -

judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06). Appellate courts review the grant or denial of a motion for summary judgment de novo with no presumption of correctness. *Id.* at 250.

"[A]s a general rule, negligence cases are not amenable to disposition on summary judgment," however, summary judgment "may be used to conclude any civil case, including negligence cases, that can be and should be resolved on legal issues alone." *Fruge v. Doe,* 952 S.W.2d 408, 410 (Tenn. 1997). Summary judgment is appropriate in a negligence case if the facts together with the inferences to be drawn from the facts "are so certain and uncontroverted that reasonable minds must agree." *Keene v. Cracker Barrel Old Country Store, Inc.,* 853 S.W.2d 501, 502-03 (Tenn. Ct. App. 1992). "Courts need not submit to the jury negligence cases containing only a spark or glimmer of evidence that requires the finder-of-fact to make a leap of faith to find the defendant liable for the plaintiff's injury." *Psillas v. Home Depot, U.S.A., Inc.,* 66 S.W.3d 860, 866 (Tenn. Ct. App. 2001) (citing *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995); *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 427 (Tenn. Ct. App. 1994)).

## IV. DISCUSSION

Negligence cannot be presumed by the mere happening of an injury or accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). "Simply put, '[p]eople fall all the time but this does not perforce mean that the fall was due to another's negligence[.]'" *Steele v. Primehealth Med. Ctr., P.C.,* No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *5 (Tenn. Ct. App. Dec. 22, 2015) (quoting *Anderson v. Wal-Mart Stores E., L.P.*, No. 2:12-00037, 2013 WL 3010696, at *3 (M.D. Tenn. June 18, 2013)). A plaintiff must establish the following elements to prove a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

Business proprietors are required to exercise due care under all the circumstances, but they are not insurers of the safety of their customers or the general public. *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014); *Plunk v. Nat'l Health Inv'rs, Inc.*, 92 S.W.3d 409, 413 (Tenn. Ct. App. 2002). Property owners are responsible for "either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Parker*, 446 S.W.3d at 350 (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). The operator of a place of business has a duty to maintain the premises "'in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter,

- 5 -

be removed or repaired.'" *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 629-30 (Tenn. Ct. App. 2009) (quoting *Psillas*, 66 S.W.3d at 864). However, the property owner is not responsible for removing or warning against "'conditions from which no unreasonable risk was to be anticipated.'" *Parker*, 446 S.W.3d at 350 (quoting *Rice,* 979 S.W.2d at 309). Liability is imposed when the condition was "'a danger from which injury might be reasonably anticipated.'" *Newcomb v. State*, No. M2014-00804-COA-R3-CV, 2015 WL 3956038, at *4 (Tenn. Ct. App. June 26, 2015) (quoting *Helton v. Knox Cty., Tenn.*, 922 S.W.2d 877, 883 (Tenn. 1996)).

The issue in this case is whether a dangerous condition existed on the defendants' premises such that they had a duty to remove or repair the condition or warn of its existence. *See Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *5 (Tenn. Ct. App. Feb. 12, 2008). Elliott insists that "the existence of the faucet/spigot assuredly constituted a dangerous condition[.]" "'The determination of whether a particular location is defective, dangerous or unsafe is a question of fact.'" *Christian v. Ebenezer Homes of Tenn. Inc.*, No. M2012-01986-COA-R3-CV, 2013 WL 3808210, at *3 (Tenn. Ct. App. July 17, 2013) *perm app. denied* (Tenn. Dec. 26, 2013) (quoting *Elkins v. Hawkins County*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at *4 (Tenn. Ct. App. May 19, 2005)). The defendant "is entitled to summary judgment if it can demonstrate that the undisputed material facts at the summary judgment stage are insufficient to establish a dangerous condition for purposes of premises liability." *Cruce v. Memmex Inc.*, No. W2016-01167-COA-R3-CV, 2017 WL 497035, at *6 (Tenn. Ct. App. Feb. 7, 2017).

At this juncture, it is helpful to review some previous holdings by this Court in premises liability cases involving allegedly dangerous conditions and summary judgment. In *Cruce*, for example, a plaintiff alleged that a restaurant created a dangerous condition by covering a stairway handrail with Christmas lights and garland. *Id.* at *1. The plaintiff had fallen while descending the stairs and claimed that she was unable to steady herself with the handrail because of the garland. *Id.* The restaurant moved for summary judgment, claiming that the individual's evidence was insufficient to establish a dangerous condition. *Id.* at *2. The owner of the restaurant testified that he had decorated the railings for the past fifteen years and no one had fallen on the stairs. *Id.* The restaurant also noted that the second handrail on the stairway was unencumbered and that the plaintiff ascended the stairs earlier in the evening without incident. *Id.* The plaintiff did not allege that any building codes were violated. *Id.* The trial court granted summary judgment to the restaurant on the basis that the decorated handrail did not constitute a dangerous condition for purposes of premises liability. *Id.*

On appeal, this Court affirmed. At the outset, we explained that premises owners are only required "'to remove or warn against conditions that are, in fact, dangerous.'" *Id.* at *4 (quoting *Newcomb*, 2015 WL 3956038, at *3). "'A premises owner is not under a duty to warn of every aspect of a premises that may be unfamiliar.'" *Id.* (quoting

*Steele*, 2015 WL 9311846, at *10). Such a duty would cast the premises owner in the role of an absolute insurer of safety, "'which is not contemplated by our negligence law.'" *Id.* (quoting *Steele*, 2015 WL 9311846, at *10). "[T]o hold a premises owner liable for an injury, there must be some evidence that a dangerous condition actually existed on the premises." *Id.* (citing *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002)). Applying these principles, we concluded that the defendant-restaurant properly supported its motion for summary judgment by establishing that the stairway was flanked with a second and undecorated handrail, the decorated handrail was similarly decorated for the past fifteen years, and no one had fallen down the stairs during that time. *Id.* at *8. "Regardless of the fact that [the] Restaurant admittedly created the condition complained of, [the] Restaurant's evidence establishe[d] that 'no unreasonable risk was to be anticipated' from the condition of the stairs at the time of [the] fall." *Id.* "A condition is dangerous 'only if it is reasonably foreseeable that the condition could *probably* cause harm or injury and that a reasonably prudent property owner would not maintain the premises in such a state.'" *Id.* (quoting *Newcomb*, 2015 WL 3956038, at *4). Furthermore, we explained, the fact that an injury might be "possible, as opposed to probable," does not render a condition dangerous. *Id.*

We further concluded that the plaintiff failed to raise a genuine issue of material fact in response to the motion for summary judgment, as she submitted no evidence in the form of building codes or any other sources to establish that the handrail was made dangerous by the addition of decorations. *Id.* at *9. Under those circumstances, concluding that the decorations were dangerous "'would require speculation, conjecture, and guesswork.'" *Id.* (quoting *Boykin v. George P. Morehead Living Trust*, No. M2014-00575-COA-R3-CV, 2015 WL 3455433, at *1 (Tenn. Ct. App. May 29, 2015)). The plaintiff "simply pointed to no evidence other than the isolated incident of her fall on December 7, 2012, to show that a reasonably prudent person would not have maintained the stairwell in the same fashion or that it was reasonably foreseeable that an injury would more than likely occur." *Id.* "[T]he simple fact that one person was injured is not proof that the premises is dangerous or unsafe." *Id.* (quotation omitted). "Because the existence of a dangerous condition [was] an essential element of [the plaintiff's] premises liability claim," we affirmed the entry of summary judgment for the restaurant. *Id.* at *10.

In another case, *Cagle v. Gaylord Entertainment Co.*, No. M2002-00230-COA-R3-CV, 2002 WL 31728866, at *1 (Tenn. Ct. App. Dec. 5, 2002) *perm. app. denied* (Tenn. June 30, 2003), the plaintiff fell in a hotel parking lot when she allegedly tripped on a long white concrete curb or barrier separating opposing parking spaces. The plaintiff filed a premises liability action, and this Court affirmed the trial court's grant of summary judgment to the hotel, finding "no proof in the record" of a dangerous condition. *Id.* The curb had no obvious physical defects. *Id.* at *2. The record contained no expert testimony that the curb or parking lot was designed or constructed in an unsafe or dangerous manner; it contained no evidence of other tripping accidents on the curb; and it contained no evidence of any building code violation. *Id.* We explained, "It is

conceivable that proof could be developed that would lead to the conclusion that the design and construction of the curb and the lighting in the parking lot created an unsafe, dangerous, or perilous condition. However, this record contains no such proof." *Id.* at \*3. Without some evidence in the record that the curb was defective or dangerous, summary judgment was appropriate. *Id.*

This Court has reached similar results in many other cases involving allegedly dangerous conditions. *See, e.g., Christian*, 2013 WL 3808210, at \*5 (affirming summary judgment on a claim that windowless double doors were a dangerous condition, where the defendant showed that the doors were properly installed and functioning, they complied with applicable codes and were periodically inspected, and there were no other reports of incidents or injuries regarding the doors); *Gordon v. By-Lo Markets, Inc.*, No. E2009-02436-COA-R3-CV, 2010 WL 3895541, at \*3 (Tenn. Ct. App. Oct. 5, 2010), *perm. app. denied* (Tenn. Mar. 9, 2011) (affirming summary judgment to a grocery store where the plaintiff relied on a photograph of the stained parking lot and her testimony that a slick spot caused her fall but failed to offer any evidence demonstrating that the stained parking lot constituted a dangerous condition); *Barron v. Stephenson*, No. W2004-02906-COA-R3-CV, 2006 WL 16310, at \*4-5 (Tenn. Ct. App. Jan. 4, 2006) (affirming summary judgment in a case alleging that a wet handicap ramp constituted a dangerous condition, where the plaintiff failed to offer proof tending to show the ramp was dangerous).

Returning to the instant case, we conclude that the defendants made a properly supported motion for summary judgment by submitting a statement of undisputed material facts, deposition testimony of Elliott and the restaurant manager, and an affidavit of a licensed plumber. This evidence established that faucets under sinks in commercial restrooms are quite common, this particular faucet complied with the International Plumbing Code, and, in the opinion of a licensed plumber, did not constitute a dangerous condition. The plumber also opined that the bathroom drain and the bathroom as a whole complied with the plumbing code. The restaurant manager was unaware of any previous issues with water accumulating on the floor or anyone using the utility faucet. In response to the motion, Elliott "[did] not dispute that the faucet may be in compliance with plumbing code" or that it was properly functioning, but he nevertheless insisted that a jury could find that the defendants created a dangerous condition by choosing to allow a functioning faucet to exist without taking additional steps to prevent it from causing water to accumulate on the floor, such as sealing or locking it. We disagree.

The evidence in this case would require a fact finder to speculate in order to find that the existence of the utility faucet constituted a dangerous condition. When faced with a properly supported motion for summary judgment, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find" in its favor. *Rye*, 477 S.W.3d at 265. "[S]ummary judgment may be

granted when the evidence supporting the plaintiff's claim 'is merely colorable or is not significantly probative.'" *Id.* at 252 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

> 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]'

*Id.* (quoting *Anderson*, 477 U.S. at 252).

Again, business owners "do not owe a duty to protect their customers from any and all risks." *Grady*, 2013 WL 4107285, at \*2. "The duty imposed on the premises owner or occupier [] does not include the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated." *Rice*, 979 S.W.2d at 309 (quotation omitted). "A condition is dangerous 'only if it is reasonably foreseeable that the condition could *probably* cause harm or injury and that a reasonably prudent property owner would not maintain the premises in such a state.'" *Newcomb*, 2015 WL 3956038, at \*4 (quoting *Stewart*, 2008 WL 426458, at \*4). The fact that an injury may be possible does not make a condition dangerous. *Id.* at \*4; *see also Christian*, 2013 WL 3808210, at \*3 ("'[P]robability, not possibility, governs; that it is possible . . . does not make it dangerous[.]'") (quotation omitted). At most, the evidence in this case showed a mere possibility rather than a probability of injury, which is insufficient to establish a dangerous condition. Although an unfortunate accident occurred, the facts do not demonstrate that a dangerous condition existed on the premises such that the defendants had a duty to remove or repair the condition or warn customers of its existence.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Jonathan Elliott, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE